[Civ. No. 1543.  Fourth Appellate District.—January 15, 1935.]

In the Matter of the Estate of MARIA L. HARRIS, Deceased.  MARY E. GRIFFITH et al., Respondents, v. CALIFORNIA CHRISTIAN COLLEGE (a Corporation) et al., Appellants.

Frank G. Tyrrell and Head, Wellington & Jacobs for Appellants.

R. Y. Williams and Chas. D. Swanner for Respondents.

BARNARD, P. J.—Maria L. Harris died on July 2, 1933. Two separate instruments were offered for probate as her

last will by the executors named in both. Each of these instruments consisted of three pages, was dated May 8, 1915, was in the form of a will and was entirely written, dated and subscribed by the decedent. The instruments were largely alike but they were not duplicates. Each purported to give the same amounts to certain relatives and other amounts to certain religious and charitable organizations. In addition to minor differences in wording and in punctuation the instruments differed materially in that one contained some five bequests of $500 each to named individuals which were not in the other, while the other contained one bequest of a similar amount which does not appear in the first. One instrument, introduced as exhibit 1, contained the word "copy" in the handwriting of the deceased near the top of the first page and was found, after the death of decedent, in a small sealed envelope addressed to Mr. Horatio J. Forgy at an address in Santa Ana. This envelope, also having upon it the word "copy" in the handwriting of the deceased, was found among some letters and receipts in a drawer of a desk which had belonged to her. The other instrument, introduced as exhibit 2, had the word "copy" in the handwriting of the deceased near the top of each of its three pages. This instrument, in a small sealed envelope addressed to Mr. Horatio J. Forgy, was found in the middle of a bundle of duplicate income tax reports of the decedent by an officer of a bank who testified that the bundle had been brought to the bank, after the death of the deceased, by one of her nieces.

A contest was filed by certain heirs and the matter was submitted to a jury upon the issue as to whether either or both of the instruments in question had been executed by the deceased with testamentary intent. The verdict was in favor of the contestants and judgment was entered in accordance therewith, from which judgment this appeal was taken by the religious and charitable institutions named as beneficiaries in the offered instruments.

Appellants' first contention is that the fact that each of these instruments, although otherwise entirely sufficient to constitute an holographic will, was plainly and carefully marked "copy" by the supposed testator presents only a question of law which should not have been submitted to the jury. It is argued that each instrument is, in itself, complete evidence of the intention of the writer thereof; that

it is immaterial whether or not they are identical with each other or complete duplicates of something else since they are original testamentary writings; and that the only question is one of construction, which was for the court and not for the jury.

It is well settled that whenever doubt arises as to the meaning of a will this doubt is to be resolved by construction, which is for the court as a matter of law (*Estate of Donnellan,* 164 Cal. 14 [127 Pac. 166]). No such question was here presented. The wording of each of these instruments is unambiguous and no question has arisen with regard to the meaning thereof. The word ''copy'', written on the instruments, throws some light on the intention of the writer, but does not affect the meaning of the language used therein and raises no question with regard to that meaning which calls for any construction thereof. The question presented is not one of construction as to the meaning of the instruments but is as to whether they were executed with testamentary intent. In *Estate of Button,* 209 Cal. 325 [287 Pac. 964], the court said:

''In order for a document to be the last will and testament of a deceased person, it must, in addition to meeting all other legal requirements, clearly show that the decedent intended it to take effect only after his death, and it must satisfactorily appear therefrom that the decedent intended by the very paper itself to make a disposition of his property in favor of the party claiming thereunder.''

This question as to the intent of the deceased with respect to these instruments was one of fact which was properly submitted to the jury.

It is next contended that there is no evidence whatever to support the implied finding of the jury, adopted by the court in the judgment, to the effect that the decedent did not intend these documents, either separately or collectively, as her last will. The very fact that these instruments were marked as copies indicates that there had been originals, or an original, and justifies an inference to that effect. They are certainly not copies of each other and, if copies at all, they must have been copies of other documents. The fact, as testified to, that such an original was not found justifies the inference that it had been destroyed and in any event

it was incumbent upon the proponents to explain the absence of the original instruments in order to justify the use of copies. In addition to these inferences there was some evidence indicating that at least one original will had existed. H. J. Forgy testified that he had handled certain legal matters for the deceased; that some years prior to 1920 she showed him her will and asked him whether it was properly signed and dated; that he examined it only for the purpose of answering these questions; that he did not see the word "copy" upon the instrument shown him; and that he would have noticed the same had it been there. He further testified that some two years before 1920 Miss Harris, just before leaving on a trip to Alaska, left with him an envelope which she said contained her will; that at that time he gave her a memorandum to the effect that he was holding her will for her; and that when she returned a few weeks later she asked for and was given the paper she had left with him. An officer of the bank above referred to testified that some time before the death of Miss Harris, when a guardian for her estate was appointed, he was present when her lock box in the bank was opened; that this box contained mortgages, bonds and other valuable papers; that it also contained a small envelope similar to those in which the two instruments in question were later found, on which was written: "The Last Will and Testament is filed with me. H. J. F."; that no papers of value were found anywhere except in this box; and that the instruments here in question first came to his attention after the death of the decedent.

The word "copy" on these instruments indicates a lack of intention that they were to constitute originals in such a matter as a will, where one instrument only is to take effect, and we think all of the evidence taken together, with the reasonable inferences therefrom, justifies the implied finding that these particular instruments were not executed with testamentary intent, and is sufficient to sustain the verdict of the jury.

A further consideration in support of the verdict is that there is nothing to show which of these instruments, even if they were executed with testamentary intent, is the last will of the deceased. There was an entire failure on the part of the proponents to establish that necessary element, and the two documents, each complete in itself, bear

the same date. The appellants in effect concede this by arguing that either or both of the instruments is or are the last will of the deceased, although no attempt is made to point out any evidence to indicate that either was executed after the other or that either was intended to be a codicil of the other.

The appellants maintain that the court committed error in refusing to give two instructions asked for. The first of these was a formula instruction. There was no evidence to justify the first part of the instruction and the remaining portions instructed the jury to find for the proponents in the event they found that the two instruments were wholly written, dated and signed by the decedent and that they had not been revoked. It was stipulated at the trial that the instruments were wholly written, dated, and signed by the decedent and the instruction ignores the real issue in the case as to the intent with which they were written and signed. The second instruction refused, in defining the word ''copy'', included a further definition which had no relation to this case under the evidence and which, if adopted and followed by the jury, would have compelled a verdict against the appellants. In so far as applicable to this case, everything in this instruction is contained in another instruction given by the court, and the jury was fully and correctly instructed, both as to the meaning of the word ''copy'' and as to the issue submitted to them, that of testamentary intent. A further objection to a part of one of the instructions given is based upon appellants' contention that an holographic copy of an holographic will is just as much an original as the one first written and has already been considered under the claim that the only question presented is one of law. We find no error in connection with the instructions given or refused.

The instruments in question purported to give the appellant corporations the sum of $196,000. The respondents made an offer of proof to the effect that between 1915 and the date of her death the deceased gave to these corporations more than $300,000, a large portion of this being given in 1926 and 1927, and that she left an estate amounting only to $71,000. The court refused to receive such evidence and the respondents complain that this ruling was erroneous. They have not appealed from the judgment, which

was in their favor, and the point need not be here considered.

We think that a question of fact is here presented which has been resolved by the jury upon sufficient evidence and under correct instructions. The judgment is affirmed.

Marks, J., and Jennings, J., concurred.